UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KAREN FUKAWA,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER,<br><br>*Defendant*. | Civil Action No. 4:24-cv-00150 |

# COMPLAINT

Plaintiff Karen Fukawa ("Ms. Fukawa" or "Plaintiff"), by and through her undersigned counsel, for her Complaint against the University of Texas MD Anderson Cancer Center ("MD Anderson" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Under the laws of the United States, and of the State of Texas, all employees are protected against discrimination in the workplace based on race.

2. The laws that enshrine these protections are colorblind. Federal and Texas law is hostile to race-based employment discrimination, no matter the victim's race.

3. Karen Fukawa is a loyal, trusted, and dedicated employee of MD Anderson. For the last twenty years, she has dedicated herself tirelessly to the improvement and success of MD Anderson, and in particular, to MD Anderson's Faculty Senate.

4. Throughout Ms. Fukawa's two decades of service to MD Anderson, she has been promoted again and again, received consistently positive performance reviews, and cultivated

stellar relationships with multiple Faculty Senate Chairpersons and leaders of the Faculty Senate's Executive Committee.

5. Ms. Fukawa's sterling reputation was tarnished in December 2021 when, in a shocking turn of events, she was wrongfully accused of bullying her direct report — one of her closest friends — a Black woman named Josette Glaze ("Ms. Glaze").

6. Ms. Fukawa was subjected to a formal investigation for the alleged bullying by MD Anderson's hired guns at Littler Mendelson P.C. ("Littler"). Littler found that the bullying allegations were unsubstantiated, and Ms. Fukawa was *cleared* of any wrongdoing.

7. However, while the first investigation was ongoing, Ms. Fukawa was subjected to a *second* investigation by Littler based on spurious allegations that she retaliated against Ms. Glaze for participating in the bullying investigation.

8. Based on Ms. Fukawa sending Ms. Glaze emails that were civil, professional, and addressed legitimate workplace issues — such as ensuring the accuracy of MD Anderson records and adhering to MD Anderson policies — Littler issued a report finding that the retaliation allegations were substantiated.

9. As a result of Littler's second investigation and report, the MD Anderson Administration called a meeting where MD Anderson's Executive Director of Human Resources Management, Cortney Hodge ("Hodge"), unlawfully called for Ms. Fukawa to be removed from her position as Faculty Senate Administrative Director.

10. Faculty Senate Chair-Elect Dr. Eugenie Kleinerman, who attended this meeting, confirmed that Hodge told the MD Anderson Administration that Ms. Fukawa had to be removed because Ms. Glaze is Black, Ms. Fukawa is White, and based on these racial optics, Ms. Glaze could sue MD Anderson and the Faculty Senate officers and win.

11. After this meeting, MD Anderson sent a "corrective action" letter to Ms. Fukawa. In the letter, MD Anderson notified Ms. Fukawa that she had been demoted from Faculty Senate Administrative Director to Project Director, and that her duties would "no longer include facilitating or supporting the administration of the Faculty Senate."

12. Following her demotion, Ms. Fukawa suffered acute anxiety and depression so severe that it prevented her from working, and she needed to take FMLA leave. The emotional distress that MD Anderson inflicted on Ms. Fukawa was so extreme that she developed a range of tangible, medically documented health problems, including tachycardia, hair loss, insomnia, loss of appetite, and panic attacks. In Ms. Fukawa's own words, MD Anderson's unlawful discrimination against her ruined her career and destroyed her life.

13. This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress MD Anderson's discrimination against Ms. Fukawa in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE §§ 21.001-21.556.

## JURISDICTION AND VENUE

14. As this action involves federal questions regarding the deprivation of Ms. Fukawa's rights under Title VII and Section 1981, the Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

15. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Ms. Fukawa's related claims arising under the TCHRA.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because both Ms. Fukawa and MD Anderson are residents in this district, and all or substantially all of Defendant's unlawful employment practices, as alleged in this Complaint, occurred in this district.

## ADMINISTRATIVE AND PROCEDURAL BACKGROUND

17. On June 8, 2022, within 180 days of MD Anderson's adverse employment action, Ms. Fukawa filed a charge of discrimination on the basis of race (the "EEOC Charge") with the Texas Workforce Commission, Civil Rights Division ("TWC"), and the Equal Employment Opportunity Commission ("EEOC").

18. Plaintiff's EEOC Charge arises out of and alleges many of the same facts and claims of discrimination and retaliation on the basis of race as are alleged in this Complaint.

19. On September 15, 2023, the EEOC granted Ms. Fukawa's request for a Notice of Right to Sue (the "Notice") and provided Ms. Fukawa a copy of the Notice. The Notice provided that Ms. Fukawa had ninety days — until December 14, 2023 — to file a lawsuit based on the EEOC Charge.

20. On November 28, 2023, counsel for Ms. Fukawa conferred with counsel for MD Anderson seeking MD Anderson's agreement to toll and extend Ms. Fukawa's deadline to file this Complaint, from December 14, 2023 until January 12, 2024. MD Anderson agreed to Ms. Fukawa's tolling and deadline extension request.

21. On November 28, 2023, counsel for Ms. Fukawa wrote to counsel for MD Anderson by email seeking written confirmation of the parties' tolling agreement. Later that day, counsel for MD Anderson confirmed in writing that MD Anderson agreed to the extension of Ms. Fukawa's deadline to file this Complaint until January 12, 2024.

22. All conditions precedent to the institution of this lawsuit have been fulfilled.

**PARTIES**

23.     Plaintiff Karen Fukawa is a resident of Fulshear, Texas. At all relevant times, Ms. Fukawa has been a resident of the State of Texas and met the definition of "employee" under all statutes that are applicable to this action.

24.     Defendant MD Anderson is an educational institution, research hub, and comprehensive cancer center within the University of Texas system. The MD Anderson location where Ms. Fukawa is an employee is located in the Texas Medical Center at 1515 Holcombe Boulevard, Houston, Texas 77030.

**FACTS**

**Karen Fukawa Becomes a Treasured Institution in the MD Anderson Faculty Senate**

25.     Karen Fukawa, an employee of MD Anderson, has dedicated the past twenty years of her working life to MD Anderson's Faculty Senate (the "Faculty Senate" or "Senate").

26.     The Faculty Senate is a key institution at MD Anderson. The Faculty Senate is comprised of 218 MD Anderson faculty members — "Senators" — elected by their peers. It is governed by a twenty-three-member Executive Committee (the "ECFS"), and has sixteen Senate committees and multiple ad hoc committees. The Faculty Senate is headed by a chairperson who serves on MD Anderson's Shared Governance Committee, along with MD Anderson's President and other MD Anderson executives.

27.     Perhaps its most important function, the Faculty Senate represents the faculty's interests in interactions with the MD Anderson administration (the "Administration"), namely, MD Anderson's executives. The Faculty Senate advocates for MD Anderson faculty on matters including working conditions, compensation, and employment policies. More than 1800 MD

Anderson faculty in 75 academic departments have their interests represented to the Administration by the Faculty Senate.

28.     Ms. Fukawa began her career at MD Anderson in September 2002, when she was hired as a Staff Assistant in the Office of Research Administration. Ms. Fukawa was hired as a Staff Assistant to the Faculty Senate in 2003. She was promoted to Project Manager in 2007. In 2015, Ms. Fukawa was again promoted, this time to Administrative Director of the Senate.

29.     The Administrative Director is the most senior administrator for the Faculty Senate, with responsibilities that extend to every aspect of the Faculty Senate's business. The Administrative Director is responsible for coordinating the Senate-related activities of all 218 Senators, the ECFS, sixteen Senate committees, and multiple ad hoc committees.

30.     According to no fewer than *seven* past Senate Chairs, Ms. Fukawa

- has "far exceeded" the expectations of the Administrative Director position;
- is "such a dedicated and productive employee," the likes of which the past Chairs "have rarely come across";
- "is gifted with an amazing set of organizational and managerial skills that are ideally suited to handling the complex operations of the Senate Office";
- "is a multitasker" who "drives agendas forward," "excels in the face of deadlines," and "anticipates problems and comes up with potential solutions."

31.     Because of these "remarkable administrative skills," Ms. Fukawa was repeatedly promoted, ultimately to the Administrative Director position.

32.     Ms. Fukawa was a successful Administrative Director, with the same group of seven past Senate Chairs calling her the "glue that holds everything together and assures a smooth an orderly transition of Senate business from year to year."

6

33. In fact, Ms. Fukawa was such a successful Administrative Director, with such useful administrative talents, and made such meaningful contributions to the Faculty Senate, that the esteem for her has extended beyond the MD Anderson faculty to faculty at other institutions. For example, Ms. Fukawa has assisted faculty at Memorial Sloan-Kettering Cancer Center in New York establish their own faculty senate.

34. Beyond her administrative contributions and talents, Ms. Fukawa was known for her "exemplary" relationships with others — "not only to her office colleagues, but to the faculty in general." Ms. Fukawa enthusiastically mentored new MD Anderson faculty on the structure and function of the Senate, as well as on MD Anderson's historical accomplishments.

35. Seven former Senate Chairs have attested that Ms. Fukawa's "uplifting and positive attitude" has "contributed immensely to faculty morale," that Ms. Fukawa "epitomizes" MD Anderson's "institutional core values," and that she "serves as an example to all who strive daily to improve the quality of [MD Anderson]."

**Ms. Fukawa Develops a Close Working Relationship and Friendship with Ms. Glaze**

36. In 2009, Ms. Fukawa recruited Ms. Glaze to work with her as the Faculty Senate Administrative Assistant. At the time Ms. Fukawa recruited Ms. Glaze, Ms. Glaze had worked for MD Anderson as an administrative clerk and an interim catering manager. Eventually, Ms. Fukawa promoted Ms. Glaze to the position of Faculty Senate Administrative Coordinator. Ms. Glaze reported to Ms. Fukawa from 2009 until Ms. Fukawa's demotion in 2022.

37. Throughout their working relationship, Ms. Fukawa was a steadfast and trusted mentor to Ms. Glaze, offering her advice and support as Ms. Glaze received her bachelor's degree and furthered her career at MD Anderson.

7

38. Outside of work, the two women grew very close. Ms. Fukawa had considered Ms. Glaze to be one of her closest friends: for instance, Ms. Glaze attended the weddings of both of Ms. Fukawa's children, and outside of immediate family, Ms. Glaze was the first visitor in the delivery room to see Ms. Fukawa's granddaughter. Over the years, Ms. Fukawa also provided material support to Ms. Glaze during periods of financial difficulty that Ms. Glaze experienced.

**MD Anderson Launches a "Kafkaesque" Witch-hunt Targeting Ms. Fukawa**

39. On December 21, 2021, MD Anderson cast aside Ms. Fukawa's decades of loyal service and valuable contributions and launched a witch-hunt against her driven by misguided politics.

40. The bullying allegations, made in an internal and anonymous complaint, came as a surprise to Ms. Fukawa — not only because they were baseless (as later confirmed by Littler), but in light of the close working relationship and personal friendship that Ms. Fukawa had developed with Ms. Glaze over the prior thirteen years.

41. MD Anderson retained Littler to investigate the bullying allegations. Ms. Fukawa fully cooperated with Littler's investigation, including by producing emails, sitting for two separate interviews, and submitting two detailed, written responses to the allegations.

42. On April 1, 2022, after more than three months of investigation, Litter found that the allegations that Ms. Fukawa bullied Ms. Glaze were unfounded.

43. However, while the bullying investigation was ongoing, Littler conducted a second investigation against Ms. Fukawa based on allegations that she retaliated against Ms. Glaze for Ms. Glaze's participation in the bullying investigation.

44. On February 16, 2022, Littler sent Ms. Fukawa a notice detailing the retaliation allegations (the "Retaliation Notice").

45. During the period when the retaliation was alleged to have occurred (the "Allegation Period"), Ms. Fukawa and Ms. Glaze were working remotely. During most of the Allegation Period, work-related communications between Ms. Fukawa and Ms. Glaze occurred almost exclusively by email, often with other MD Anderson employees copied. The email-intensive nature of the communications between Ms. Fukawa and Ms. Glaze occurred as a result of a directive given by Yolan Campbell (MD Anderson's Vice President of Human Resources) to Ms. Fukawa, on February 3, 2022. Ms. Campbell's directive was that Ms. Fukawa must communicate with Ms. Glaze about work-related issues exclusively by email.

46. On February 21, 2022, in response to the Retaliation Notice, Ms. Fukawa provided Littler with the work-related emails she had sent to Ms. Glaze during the Allegation Period (the "Email Records"). Ms. Fukawa was interviewed by Littler the following day.

47. The Email Records show that Ms. Fukawa engaged with Ms. Glaze in a normal manner. The Email Records were consistent with how Ms. Fukawa and Ms. Glaze had interacted throughout their years working together. The volume of the Email Records was typical given the high number of upcoming Faculty Senate events and projects with near-term deadlines that required the attention of both women, which included the following:

| Date | Event |
|---|---|
| 2/15/2022 | Chair-Elect Election |
| 3/16/2022 | ECFS Elections |
| 3/31/2022 | Faculty Honors Convocation |
| Winter/Spring 2022 | Coordination of the Faculty Achievement Awards Committee |

48. The volume of the Email Records is also consistent with the directive given by Yolan Campbell to Ms. Fukawa on February 3, 2022.

49. The Email Records show that, if anything, Ms. Fukawa exercised courtesy and discretion in managing Ms. Glaze. During the Allegation Period, Ms. Fukawa learned that Ms.

9

Glaze had repeatedly violated Senate policy in her handling of ECFS and Senate meeting recordings and had made various negligent errors in maintaining other Senate records.

50. For instance, rather than store ECFS meeting recordings on the MD Anderson shared drive — as required by Senate policy — Ms. Glaze stored them on her personal laptop. Ms. Fukawa's response to this policy violation was to gently remind Ms. Glaze of the policy and to request that Ms. Glaze transfer the files to the shared drive.

51. Ms. Fukawa also discovered that the ECFS membership listing — a topic that Littler had noted in its investigation as relevant information — contained several errors regarding faculty members' terms. It was Ms. Glaze's responsibility to maintain this file and ensure that the information contained in it was accurate and complete. Again, Ms. Fukawa handled the situation with professionalism, in a manner typical for a supervisor overseeing her direct report, in asking Ms. Glaze to correct the errors and double check her work going forward, noting that such effort "would be a big help" and that Ms. Fukawa would "appreciate it."

52. As yet another example of the purported "retaliation," Ms. Fukawa asked Ms. Glaze to update the folder containing the ECFS Confidentiality Agreements — *a folder that Ms. Glaze was responsible for maintaining in the ordinary course of business* — because the folder was incomplete, lacking agreements for fiscal years 2018 through 2022. Ms. Fukawa made this request, one she was entitled to make as Ms. Glaze's supervisor, only because she wanted to ensure that Littler had a complete set of records relevant to its bullying investigation.

53. Seven past Chairs of the Faculty Senate have opined that Ms. Glaze was "often neglectful" in fulfilling her work expectations. Yet as the Email Records show, Ms. Fukawa addressed Ms. Glaze's consistent negligence in a professional and polite manner.

54. Despite Ms. Glaze's incompetence, Ms. Fukawa did the opposite of retaliate: she went above and beyond to help her friend succeed. In a February 1, 2022 email, Ms. Fukawa — sensing that the Senate's schedule had resulted in a heavy workload — offered to approach the Senate to request an assistant who could help Ms. Glaze.

55. On April 21, 2022, Cortney Hodge, MD Anderson's Executive Director of Human Resources Management, emailed Ms. Fukawa to inform her that Littler found the retaliation allegations to be "substantiated." Though it has never provided Ms. Fukawa its report, Littler apparently found that Ms. Fukawa's mundane feedback on Ms. Glaze's work, as evidenced in the Email Records, amounted to "Retaliation" in violation of MD Anderson's Non-Retaliation Policy.

56. Notably, Littler's findings are at odds with the plain language of MD Anderson's Non-Retaliation Policy. The policy provides that "Retaliation" requires an "Adverse Action," which excludes "disciplinary action(s) taken against a . . . member of MD Anderson's workforce as a result of [her] own violation(s) of laws, rules, policies, or procedures, or negative comments in an otherwise positive or neutral evaluation, or negative comments that are justified by a [her] poor work performance or history." Because of Ms. Glaze's multiple, repeated violations of MD Anderson Faculty Senate policies and procedures, Ms. Fukawa's feedback by email is expressly excluded from the definition of an "Adverse Action" under the Non-Retaliation Policy.

57. Littler's findings are also at odds with the observations of seven former Faculty Senate Chairs, who wrote that they had "seen nothing in [Ms. Fukawa's] character, temperament, or mind-set that is remotely consistent with the alleged charge."

58. Those same seven former Faculty Senate Chairs have described the retaliation investigation and Littler's findings to be "part of a coordinated effort to dismiss Ms. Fukawa from her current position" and "nothing short of Kafkaesque."

11

**MD Anderson Demotes Ms. Fukawa Because She Is White and Ms. Glaze Is Black**

59. As a result of Littler's findings, on or about April 20, 2022, the Administration called a meeting with the officers of the Faculty Senate to discuss Ms. Fukawa's future at MD Anderson (the "Racial Discrimination Meeting").

60. Four members of the Administration attended the Racial Discrimination Meeting: (1) Cortney Hodge, Executive Director of Human Resources Management, (2) Carin Hagberg, Chief Academic Officer, (3) Dr. Guillermo Garcia-Manero, Senate Chair, and (4) Dr. Eugenie Kleinerman, Senate Chair-Elect.

61. At the Racial Discrimination Meeting, Hodge told the other attendees that Ms. Fukawa should be terminated or transferred.

62. When other attendees — Drs. Garcia-Manero and Kleinerman — pushed back against Hodge's demand, Hodge revealed the racially invidious motivation behind the ongoing witch-hunt against Ms. Fukawa.

63. In Dr. Kleinerman's own words: "I was at the meeting and the reason given for *mandating* that Karen be transferred was because *there were only 2 people in the office and Karen was a white woman supervising a black woman* and if Jo [(Ms. Glaze)] made another allegation the judge would most likely find in her favor and the institution would be at risk."

64. Dr. Kleinerman, an esteemed physician-scientist, who attended the Racial Discrimination Meeting, confirmed to her colleagues in writing that Hodge threatened the other attendees with the potential legal consequences — to MD Anderson as an institution and to them personally — of allowing Ms. Fukawa, a White woman, to continue to supervise Ms. Glaze, a Black woman. Hodge made her discriminatory view clear: if MD Anderson faced a legal risk from Ms. Glaze, it would be due to Ms. Fukawa's identity as a "white woman." Dr. Kleinerman also

reported her concerns about the Administration's treatment of Ms. Fukawa to MD Anderson's Human Resources department.

65. Hodge's demand that Ms. Fukawa be demoted because she is White was not based on any suggestion of racial discrimination by Ms. Fukawa. Upon information and belief, *no* allegations of race-based discrimination, retaliation, or bullying were investigated by Littler or asserted by MD Anderson or Ms. Glaze against Ms. Fukawa.

66. Rather, Hodge's warning that MD Anderson and Administration members would be sued by Ms. Glaze and lose just because Ms. Fukawa is White — as if facts and due process were irrelevant — was a blatant scare tactic, based on divisive misinformation.

67. Hodge's racial fearmongering worked. On May 20, 2022, Faculty Senate Past Chair Dr. Garcia-Manero and Current Chair Dr. Glitza Oliva (the latter of whom was notably absent at the Racial Discrimination Meeting) FedExed Ms. Fukawa a letter dated May 2, 2022, declaring that MD Anderson would be taking a "corrective action" against her. Notably, then-Faculty Senate Chair-Elect Dr. Kleinerman did not join in this letter.

68. The corrective action required Ms. Fukawa to take courses on emotional intelligence and professionalism in the workplace. It also included a demotion. Ms. Fukawa was transferred from her position as Faculty Senate *Administrative* Director to a *Project* Director in the office of the Chief Academic Officer. As a result, Ms. Fukawa's duties would "no longer include facilitating or supporting the administration of the Faculty Senate."

69. The transfer was not a lateral one. It was a demotion, as evidenced by subsequent emails between Ms. Fukawa and her new boss.

70. On August 30, 2022, Ms. Fukawa's new boss, Maureen Cagley, the Vice President of Academic Operations, wrote to Ms. Fukawa to give her an idea of the type of work she would

be doing, and the true nature of her role. In that email, Ms. Cagley wrote that Ms. Fukawa would be responsible for providing "***program manager support***" to the MD Anderson Graduate Education Committee, which support includes taking meeting minutes. At MD Anderson, "manager" is a term used for a position and role that is junior to "director".

71. The managerial "support" and "minute taker" roles that Ms. Fukawa was now expected to fill were those of an administrative assistant position, like the one Ms. Fukawa had supervised before her demotion, rather than a true "director" position.

72. Indeed, on various occasions after her demotion, Ms. Fukawa was delegated back to the Faculty Senate and ECFS — but only to fill in for Ms. Glaze during Ms. Glaze's prolonged absences. During these stints, Ms. Fukawa's interim duties were among those she had previously supervised: taking notes at meetings and acting as an administrative assistant. Thus, after her demotion, Ms. Fukawa became burdened with fulfilling *multiple* assistant-level roles despite having a diminished title and no managerial responsibilities akin to her previous position.

73. For Ms. Fukawa, being demoted to a role she had once managed was degrading.

**As a Result of MD Anderson's Discrimination, Ms. Fukawa's Health Suffers**

74. After she was demoted, Ms. Fukawa suffered acute anxiety and depression so severe that it prevented her from working, and she needed to take FMLA leave.

75. The emotional distress that MD Anderson inflicted on Ms. Fukawa, based on her race, was so extreme that she developed other tangible, medically documented health problems. These problems included tachycardia, hair loss, insomnia, loss of appetite, and panic attacks.

76. MD Anderson's unlawful racial discrimination has ruined Ms. Fukawa's career.

## COUNT I

### Title VII — Discrimination Based on Race

77. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if set forth fully herein.

78. Defendant took an adverse employment action against Ms. Fukawa based on Ms. Fukawa's race. Specifically, MD Anderson, based on an admission by its Executive Director of Human Resources Management, was pressured to demote Ms. Fukawa, and ultimately demoted Ms. Fukawa, because Ms. Fukawa was the "white supervisor" of an "African-American."

79. But for Ms. Fukawa's race, Defendant would not have demoted Ms. Fukawa.

80. By demoting Ms. Fukawa based on her race, MD Anderson discriminated against Ms. Fukawa in violation of Title VII.

## COUNT II

### Section 1981 — Discrimination Based on Race

81. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if set forth fully herein.

82. Defendant took an adverse employment action against Ms. Fukawa based on Ms. Fukawa's race. Specifically, MD Anderson, based on an admission by its Executive Director of Human Resources Management, was pressured to demote Ms. Fukawa, and ultimately demoted Ms. Fukawa, because Ms. Fukawa was the "white supervisor" of an "African-American."

83. But for Ms. Fukawa's race, Defendant would not have demoted Ms. Fukawa.

84. By demoting Ms. Fukawa based on her race, MD Anderson discriminated against Ms. Fukawa in violation of Section 1981.

## COUNT III

### TCHRA — Discrimination Based on Race

85. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if set forth fully herein.

86. Defendant took an adverse employment action against Ms. Fukawa based on Ms. Fukawa's race. Specifically, MD Anderson, based on an admission by its Executive Director of Human Resources Management, was pressured to demote Ms. Fukawa, and ultimately demoted Ms. Fukawa, because Ms. Fukawa was the "white supervisor" of an "African-American."

87. But for Ms. Fukawa's race, Defendant would not have demoted Ms. Fukawa.

88. By demoting Ms. Fukawa based on her race, MD Anderson discriminated against Ms. Fukawa in violation of the TCHRA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, as follows:

A. A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State of Texas;

B. An injunction and order permanently restraining Defendant from engaging in the unlawful conduct complained of herein with respect to Ms. Fukawa;

C. An order directing Defendant to reinstate Ms. Fukawa to the employment position and title she occupied and possessed before Defendant's discriminatory and otherwise unlawful conduct towards her, and to take such other action as is necessary to ensure that the effects of Defendant's unlawful employment practices and conduct do not continue to affect Ms. Fukawa in the course of her employment with Defendant;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Ms. Fukawa for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Ms. Fukawa for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, embarrassment, depression, stress and anxiety, loss of self-esteem, loss of self-confidence, loss of personal dignity, and emotional pain and suffering, as well as any other physical or mental injuries;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Ms. Fukawa for harm to her professional and personal reputation and loss of career fulfillment;

G. An award of damages or any and all other monetary and/or non-monetary losses suffered by Ms. Fukawa in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages;

I. An award of costs that Ms. Fukawa has incurred in this action, as well as reasonable attorney's fees incurred related to this action to the extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Karen Fukawa demands a jury trial on all triable issues in this case.

Dated: January 12, 2024

        Respectfully Submitted,

        **LOCKELAW PLLC**

By:   /s/ *Adam Locke*
       ADAM LOCKE
       Texas State Bar No. 24083184
       2617 Bissonnet Street, Suite 503
       Houston, Texas 77005
       Telephone: (713) 832-0242
       Facsimile: (713) 565-4709
       adam@lockelaw.com

**FOSTER YARBOROUGH PLLC**

PATRICK YARBOROUGH
Texas State Bar No. 24084129
917 Franklin Street, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
patrick@fosteryarborough.com

*Counsel for Karen Fukawa*